FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 1 1 2026

KEVIN P. WEIMER, Clerk
by: _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

Breanna Davis,

**Plaintiff,**

v.

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA;

DR. MOHSEN ALIABADI, individually and in his official capacity;

DR. ELLIOT KROP, individually and in his official capacity;

DR. JERE BOUDELL, individually and in her official capacity;

DR. EBRAHIM KHOSRAVI, individually and in his official capacity;

DR. JEANETTE WALLEY-JEAN, individually and in her official capacity;

CASSANDRA PARKER, individually and in her official capacity;

DR. LOUISA CATALANO, individually and in her official capacity;

DR. JILL DRAKE, individually and in her official capacity;

DR. GEORJ LEWIS, individually and in his official capacity,

**Defendants.**

Civil Action No. _____

1 : 26 -CV- 4 5 2 9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Breanna Davis, proceeding pro se, brings this action against Defendants for violations of federal civil rights laws, constitutional rights, and applicable state law arising from Plaintiff's enrollment at Clayton State University during Fall 2025.

## I. INTRODUCTION

1. Plaintiff brings this action arising from Defendants' discriminatory, retaliatory, and procedurally unfair treatment of Plaintiff while she was enrolled in Calculus II at Clayton State University.

2. After achieving a high examination score, Plaintiff was subjected to unusual scrutiny, interrogation regarding alleged academic misconduct, and compelled to demonstrate academic competency through additional testing.

3. After reporting concerns regarding the treatment Plaintiff received, Defendants engaged in retaliatory conduct, including hostile interactions, adverse academic actions, and a biased grade review process.

4. Defendants' actions resulted in a disputed failing grade, delayed graduation, emotional distress, financial harm, and damage to Plaintiff's academic reputation.

5. The conduct described herein was motivated, at least in part, by discriminatory animus based on race and sex and was carried out in

2

retaliation for Plaintiff's complaints regarding unlawful treatment and faculty misconduct.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including claims under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and 42 U.S.C. § 1983.

7. Plaintiff also asserts claims arising under Georgia law. To the extent permitted by law, Plaintiff invokes this Court's supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same underlying events and facts.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred within the Northern District of Georgia, and Defendants reside and/or conduct official duties within this District.

9. Plaintiff seeks damages, injunctive relief, and any other relief available under applicable law.

## III. PARTIES

### Plaintiff

10. Plaintiff Breanna Davis is an individual residing in the State of Georgia. During the Fall 2025 semester, Plaintiff was enrolled as a student at Clayton State University and was enrolled in Calculus II.

### Defendants

11. Defendant Board of Regents of the University System of Georgia is the governing body responsible for the operation and administration of public higher education institutions within the University System of Georgia, including Clayton State University. Defendant is named to the extent permitted by applicable law.

12. Defendant Dr. Mohsen Aliabadi was, at all relevant times, employed by Clayton State University as a Calculus II instructor. Defendant Dr. Mohsen Aliabadi participated in decisions and conduct affecting Plaintiff's treatment in the course.

13. Defendant Dr. Elliot Krop was, at all relevant times, employed by Clayton State University as Department Chair. Defendant Dr. Eliot Krop participated in responding to Plaintiff's complaints and in matters affecting Plaintiff's academic circumstances.

14. Defendant Dr. Jere Boudell was, at all relevant times, employed by Clayton State University as Associate Dean. Defendant Dr. Jere Boudell participated in meetings, communications, and review processes concerning Plaintiff's academic complaints and grade appeal.

15. Defendant Dr. Ebrahim Khosravi was, at all relevant times, employed by Clayton State University as Dean. Defendant Dr. Ebrahim Khosravi participated in administrative decisions concerning Plaintiff's complaints and academic situation.

16. Defendant Cassandra Parker was, at all relevant times, associated with Clayton State University as an instructor assigned to Plaintiff's course. Defendant Cassandra Parker participated in course administration and grading decisions affecting Plaintiff.

17. Defendant Dr. Louisa Catalano was, at all relevant times, associated with Clayton State University. Defendant Dr. Louisa Catalano's name appeared in connection with the review of Plaintiff's academic records and/or appeal process.

18. Defendant Dr. Jeanette Walley-Jean was, at all relevant times, employed by Clayton State University as Provost. Defendant Dr. Walley-Jean participated in administrative review of Plaintiff's complaints.

19. Defendant Dr. Jill Drake was, at all relevant times, employed by Clayton State University as Vice President. Defendant Dr. Jill Drake participated in review of Plaintiff's appeal or related complaints.

20. Defendant Dr. Georj Lewis was, at all relevant times, employed by Clayton State University as President. Defendant Dr. Georj Lewis received notice of Plaintiff's complaints.

## IV. FACTUAL ALLEGATIONS

### A. September 17, 2025,  Interrogation Incident

21. During Fall 2025, Plaintiff was enrolled in Calculus II.

22. On or about September 17, 2025, Plaintiff received a high score on a midterm examination of 98%.

23. Following the examination, Defendant Dr. Mohsen Aliabadi required Plaintiff to meet with him regarding concerns about the examination result.

24. Plaintiff was interrogated without consent and representation during this meeting about possible academic misconduct.

25. Plaintiff denied engaging in academic misconduct.

26. Plaintiff was required to reprove her competence without justification under stressful, intimidating and coercive circumstances to demonstrate her knowledge of the material.

27. Plaintiff was not provided with advance written notice of academic misconduct allegations, formal charges, or a hearing process before the meeting.

28. Plaintiff was allegedly the only student subjected to this additional scrutiny.

29. Plaintiff reported the incident to Defendant Dr. Elliot Krop on the same date.

30. Defendant Krop dismissed Plaintiff's concerns rather than initiate a neutral review.

## B. October 29, 2025, Hostile and Retaliatory Conduct

31. After Plaintiff escalated concerns regarding the September 17, 2025, incident, Plaintiff communicated with university administrators including the dean and provost seeking review and assistance.

32. On or about October 29, 2025, Plaintiff attended a scheduled meeting with Defendant Dr. Jere Boudell regarding the transition to a new instructor for Calculus II.

33. Plaintiff attended with a representative who assisted Plaintiff in communicating regarding academic concerns.

34. Defendant Dr. Jere Boudell refused to allow Plaintiff's representative to participate and stated words to the effect of, "You're a parent."

35. The exclusion of Plaintiff's representative occurred despite Plaintiff's desire for assistance.

36. During the encounter, Defendant Dr. Elliot Krop approached Plaintiff and her representative aggressively in a public administrative area.

37. Defendant Dr. Elliot Krop spoke in a hostile and raised voice, made intimidating statements and gestures, and challenged Plaintiff's ability to seek assistance or appeal university decisions.

38. Defendant Dr. Elliot Krop stated words to the effect of:

a) "You can talk to any lawyers, the President—it won't matter."

b) "I have the final say."

c) "She's gonna fail."

39. Defendant Dr. Elliot Krop pointed toward Plaintiff while making statements regarding Plaintiff's academic outcome.

40. Plaintiff's representative warned: "You're hostile."

41. Defendant Krop and Defendant Dr. Jere Boudell advanced towards Plaintiff and her representative in an aggressive manner, pointed their fingers, raised their voices, and demanded that the representative leave.

42. Defendant Dr. Elliot Krop yelled words to the effect of, "You have no right to be here," and "But you're not her."

43. The interaction caused Plaintiff and her representative to experience fear, distress, humiliation, and emotional harm.

44. Plaintiff's representative stated, "I hope you have cameras, because this is emotional distress," while indicating Plaintiff.

45. The interaction occurred in a public administrative area and was witnessed by Genesis Polo, an executive assistant.

46. Defendant Dr. Jere Boudell later apologized regarding the interaction and requested that Plaintiff complete FERPA authorization paperwork allowing her representative to participate in future meetings, despite prior administrative involvement.

## C. Promise of Academic Support and Course Continuation

47. On or about October 30, 2025, Plaintiff and her representative met with Defendant Dr. Ebrahim Khosravi and Defendant Dr. Jere Boudell.

48. Defendants apologized regarding the prior interaction and represented that Plaintiff would receive additional academic support.

49. Defendants represented that Plaintiff would receive a new instructor and personal tutoring assistance to help complete Calculus II.

50. Plaintiff relied on these representations and continued participating in the course.

**D. Disruptive Behavior Policy Violation and Arbitrary Grading**

**November 2025**

51. Plaintiff was assigned Defendant Cassandra Parker an unqualified instructor during the later portion of Calculus II.

52. Significant changes and disruptive behavior occurred in course administration after the instructor transition.

53. The course administration included:

a) conflicting syllabus versions;

b) assessment dates changed repeatedly;

c) revised requirements issued after the course began;

d) assessments occurred in disruptive environments: including personal phones calls, microwave use, eating, humming and excessive noise by Defendant Cassandra Parker while Plaintiff was actively testing;

e) reduced time between assignments, homework and examinations;

f) Grading decisions were inconsistent with course expectations;

g) zeros entered for disputed assessments;

h) zero points for correct answers;

i) assessments were not identified in the applicable syllabus;

j) no formal instructional support before examinations;

k) Promised tutoring support was unavailable during critical assessments periods.

l) one assessment included material not aligned with the homework;

m) homework deadlines were shortened creating arbitrary point deductions;

n) zero points was recorded after the end of the course for a final exam that was never scheduled.

54. Defendant Cassandra Parker described her role as a "liaison/facilitator," creating confusion regarding instructional and grading authority.

55. After Plaintiff complained about course administration concerns, Defendant Cassandra Parker communicated allegations that Plaintiff "knowingly missed examinations" and "breached" course requirements.

56. Defendant Cassandra Parker copied these false allegations to Defendant Dr. Jere Boudell.

57. Plaintiff disputes these allegations and contends that the statements omitted relevant information regarding course changes, communication problems, and disputed academic conditions.

**E. November 18, 2025, Administrative Complaint and Promissory Estoppel**

58. On or about November 18, 2025, Plaintiff and her representative met with Defendant Dr. Ebrahim Khosravi and Defendant Dr. Jere Boudell to report concerns regarding course administration, grading, and misconduct.

11

59. Defendant Dr. Ebrahim Khosravi stated words to the effect of:

"We're going to make it happen, don't worry about it."

60. Plaintiff understood this statement as an assurance that Defendants would address the academic concerns and issue a fair grade.

61. Despite these assurances, Plaintiff received a final grade of "F."

62. On or about December 03, 2025, Defendant Jeanette Walley-Jean stated words to the effect of " As you were informed, you will receive a final grade for the course based on all required assignments outlined in the syllabus." This determination ignored prior reports of disruptive behavior, syllabus changes, and promissory estoppel commitments.

63. The failing grade negatively affected Plaintiff's academic record, finances, and graduation timeline.

## F. Grade Appeal Process

64. Plaintiff submitted a grade appeal on or about January 7, 2026.

65. The appeal raised concerns regarding:

a) grading practices;

b)  syllabus changes;

c) disruptive conduct;

d) and course administration.

66. Defendant Dr. Ebrahim Khosravi deferred to Defendant Dr. Jere Boudell's recommendation rather than conducting an independent review.

67. Defendant Dr. Jere Boudell participated in the appeal process despite prior involvement in disputed events.

68. The appeal decision referenced individuals and information that Plaintiff contends are inaccurate or unauthorized.

69. Defendant Dr. Elliot Krop's name appeared in the grade appeal decision.

70. The appeal decision referenced Defendant Dr. Louisa Catalano's review despite Plaintiff's contention that she had no prior knowledge of Dr. Catalano's involvement.

71. Defendant Dr. Jere Boudell's decision letter contained statements Plaintiff disputes regarding examinations, course requirements, and communications.

72. Defendant Dr. Jere Boudell forwarded these false allegations to Defendant Dr. Jeanette Walley-Jean and others.

73. Defendant Jill Drake later issued an administrative appeal decision containing factual inaccuracies.

74. Defendant Dr. Jill Drake copied Defendant Dr. Ebrahim Khosravi, Defendant Jere Boudell and Defendant Dr. Elliot Krop these false statements.

75. The decision stated that "no procedural irregularities" had been demonstrated despite Plaintiff's complaints regarding course administration and review procedures.

76. The appeal process was not impartial and resulted in continued academic harm.

77. Plaintiff cc'd Defendant Dr. Georj Lewis on faculty member's misconduct.

## G. Resulting Harm

Defendants' actions caused:

a) delay in graduation;

b) financial losses;

c) damage to academic standing;

d) emotional distress;

e) treatment-related expenses; and

f) reputational harm.

78. Plaintiff sought professional assistance following the events described herein.

79. Plaintiff subsequently filed a police report.

80. Defendants' actions were intentional, reckless, and/or taken with disregard for Plaintiff's federally protected rights.

## V. CAUSES OF ACTION

## COUNT I— RACE DISCRIMINATION

**Violation of Title VI of the Civil Rights Act of 1964**

**42 U.S.C. § 2000d and Equal Protection Under the Fourteenth Amendment**

81. Plaintiff incorporates paragraphs 1 through 80 as if fully stated herein.

82. Plaintiff is a Black female student and a member of a protected class.

83. Defendant Board of Regents of the University System of Georgia receives federal financial assistance and is subject to Title VI requirements.

84. At all relevant times, Defendants acted under color of state law.

85. The circumstances support an inference of discriminatory intent, including:

a) Plaintiff being subjected to heightened suspicion and questioning after receiving a high examination score;

b) Plaintiff being required to demonstrate academic competency through additional testing;

c) Plaintiff experiencing hostile treatment after reporting concerns; and

d) Plaintiff receiving adverse academic consequences after asserting concerns regarding treatment.

86. Plaintiff alleges that similarly situated students outside Plaintiff's protected racial group were treated more favorably under comparable circumstances.

15

87. Defendants departed from ordinary academic procedures in responding to Plaintiff.

88. Defendants conduct was intentional and caused Plaintiff damages, including academic harm, emotional distress, financial loss, and delayed graduation.

89. Plaintiff seeks all available relief under applicable federal law.

## COUNT II — SEX-BASED DISCRIMINATION

**Violation of Title IX of the Education Amendments of 1972**

**20 U.S.C. §1681**

90. Plaintiff incorporates paragraphs 1 through 80 as if fully stated herein.

91. Plaintiff is a female student protected by Title IX.

92. Defendant Board of Regents and Clayton State University receive federal financial assistance and are subject to Title IX.

93. The circumstances support an inference of discriminatory intent, including:

a) excessive scrutiny directed toward Plaintiff as a female student;

b) intimidation and hostile treatment during administrative interactions;

c) unequal handling of Plaintiff's academic concerns;

d) retaliation after Plaintiff complained about treatment; and

e) adverse academic consequences following Plaintiff's complaints.

f)  exclusion of Plaintiff's requested support person during an administrative interaction.

g)  Defendants departed from ordinary academic procedures in responding to Plaintiff.

94. Defendant Dr. Elliot Krop's explicit statement "she gonna fail," demonstrated hostility and intimidation toward Plaintiff during a disputed administrative interaction.

95. Defendants' conduct was intentional and deprived Plaintiff of equal educational opportunities and caused damages.

## COUNT III — RETALIATION

### Violation of Title VI, Title IX, and 42 U.S.C. § 1983

96. Plaintiff incorporates paragraphs 1 through 80 as if fully stated herein.

97. Plaintiff engaged in protected activity by reporting discriminatory conduct, unfair treatment, and misconduct to university officials. Defendants knew or should have known that Plaintiff engaged in protected activity.

98. After making complaints, Defendants engaged in adverse actions, including:

a)  hostile and intimidating conduct during administrative meetings;

b)  exclusion of representative (parental advocacy).

c)  statements concerning Plaintiff's academic outcome;

d)  adverse grading actions;

17

e) false or misleading statements regarding course performance;

f) a biased appeal process.

99. The timing and circumstances demonstrate a causal connection between Plaintiff's complaints and the adverse actions.

100. Defendants' conduct would deter a reasonable student from exercising protected rights.

101. Plaintiff suffered damages as a result of the retaliation.

## COUNT IV—DEPRIVATION OF CONSTITUTIONAL RIGHTS

### 42 U.S.C. § 1983

### Fourteenth Amendment Due Process and Equal Protection

102. Plaintiff incorporates paragraphs 1 through 80 as if fully stated herein.

103. Defendants acted under color of state law.

104. Defendants deprived Plaintiff of rights secured by the Constitution and laws of the United States.

### Procedural Due Process

105. Plaintiff had protected interest in fair consideration of Plaintiff's academic status and academic record.

106. Defendants deprived Plaintiff of procedural protections by:

a) failing to provide adequate notice before academic misconduct questioning;

b) failing to provide a neutral review process;

c) permitting conflicted individuals to participate in review;

d) relying on disputed information in appeal decisions; and

e) failing to provide a meaningful opportunity to challenge inaccurate information.

## Equal Protection

107. Plaintiff incorporates her allegations of race and sex discrimination.

108. Plaintiff alleges that Defendants intentionally treated her differently from similarly situated students.

109. Defendants' conduct violated the Equal Protection Clause of the Fourteenth Amendment.

## First Amendment Retaliation

110. Plaintiff exercised protected rights by submitting complaints and seeking administrative review.

111. Defendants retaliated against Plaintiff for engaging in protected activity.

112. The retaliation caused academic, emotional, and financial harm.

## COUNT V—CIVIL CONSPIRACY

## U.S.C. § 1985(3)

113. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

114. Defendants acted together through coordinated conduct that resulted in denial of Plaintiff's federally protected rights.

115. Plaintiff committed overt acts including:

a) pointing their fingers and advancing towards representative and Plaintiff in a hostile manner and demanded they leave violating Plaintiff's constitutional rights.

b) coordinated handling of Plaintiff's complaints;

b) participation of individuals involved in disputed events in later review;

c) Reliance on disputed statements during decision-making.

116. Defendants' actions caused damages.

## COUNT VI—RETALIATORY AND ARBITRARY ACADEMIC ACTIONS

## BREACHED OF CONTRACT/POLICY VIOLATION

117. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

118. The relationship between Plaintiff and Clayton State University and Board of Regents included written academic policies, course syllabi, and published procedures governing course administration and evaluation.

119. Defendants were required to substantially comply with applicable academic policies and representations made regarding course administration.

120. Defendants breached these obligations by:

a) changing course requirements and assessment procedures;

b) issuing inconsistent course instructions;

c) altering examination schedules and requirements;

d) failing to provide promised academic support;

e) entering disputed grades inconsistent with course expectations; and

f) failing to follow established review procedures;

g) engaging in disruptive conduct including hostility, intimidation, distraction, and public humiliation;

h) distraction included personal phone calls, eating, humming, and creating excessive noise while Plaintiff was actively testing.

121. Plaintiff relied on representations regarding continued course support and completion assistance.

122. Defendants used academic authority as a means of punishing Plaintiff for raising complaints.

123. Academic decisions were influenced by improper motives rather than legitimate educational considerations.

124. Evidence supporting this claim includes:

a) timing of adverse decisions;

b) statements concerning Plaintiff's failure;

21

c) deviations from course procedures;

d) inconsistent explanations.

125. Disruptive and hostile academic environment violated university policy and federal law.

126. Defendants' failure to follow applicable obligations caused Plaintiff academic and financial damages.

## COUNT VII—DEFAMATION (Georgia Law)

127. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

128. Defendants made false statements concerning Plaintiff's academic conduct and performance.

129. Defendant Cassandra Parker communicated statements indicating that Plaintiff "knowingly missed examinations" and "breached" course obligations.

130. Defendants repeated or relied upon disputed statements concerning Plaintiff's academic performance during appeal proceedings.

131. The statements were false or materially incomplete because they omitted relevant information regarding:

a) course changes;

b) disputed examination scheduling;

c) Plaintiff's complaints regarding course administration; and

22

d) circumstances surrounding Plaintiff's academic performance.

e) asserted discussions that did not occur.

132. These statements were communicated to third parties within the university.

133. These statements harmed Plaintiff academic reputation and caused emotional and professional harm.

## COUNT VIII—ASSAULT (Georgia Law)

134. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

135. On or about October 29, 2025, Defendants Dr. Elliot Krop and Dr. Jere Boudell intentionally engaged in threatening conduct toward Plaintiff and her representative.

136. Defendants closed the distance between themselves and approached at close range, pointed, raised their voices, and made aggressive gestures.

137. Defendants' Dr. Jere Boudell and Dr. Elliot Krop's conduct caused Plaintiff and her representative to reasonably fear imminent harmful or offensive contact.

138. Plaintiff and representative suffered fear, emotional distress, humiliation, and other damages as a result.

139. Police report filed:

a) representative reported verbal assault. However, Lieutenant Hill stated words to the effect of, "simple assault."

b)  representative and Plaintiff filed a police report for simple assault.

## COUNT IX — NEGLIGENCE (Georgia Tort Claim ACT)

### Negligence Oversight/Hostile Environment /Disruptive Conduct

140. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

141. Defendants owed duties arising from their positions as university officials and employees, including duties to administer academic matters fairly and follow applicable policies.

142. Defendants breached those duties by:

a)  failing to provide a safe and non-hostile environment;

b)  failing to adequately address reported concerns;

c)  failing to take reasonable corrective action;

d)  failing to provide consistent academic administration;

e)  failing to supervise misconduct; and

f)  failing to maintain reasonable procedures for academic review.

g)  failure to adhere to syllabuses and policies constitutes negligence and breach.

h)  These failures caused Plaintiff academic harm, emotional distress, and delay in graduation.

## COUNT X — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (Georgia Law)

143. Plaintiff incorporates paragraphs 1 through 112 as if fully stated herein.

144. Defendants' conduct was extreme and outrageous, including:

a) intimidation and hostile treatment;

b) accusations of academic misconduct;

c) retaliatory academic actions;

d) publication or communication of disputed statements; and

e) unfair handling of Plaintiff's appeal.

145. Defendants knew or should have known that such conduct could cause severe emotional distress.

146. Plaintiff suffered severe emotional distress and sought professional treatment as a result.

## VI. QUALIFIED IMMUNITY

147. Plaintiff incorporates all preceding paragraphs. Defendants acted under color of state law.

148. Defendants violated clearly established constitutional rights, including:

a) the right to be free from intentional discrimination;

b) the right to equal protection;

c) the right to procedural fairness where required by law; and

d) the right to petition and complain without unlawful retaliation.

149. A reasonable official would have understood that intentional discrimination, retaliation, and denial of required procedural protections violated clearly established law.

## VII. DAMAGES

150. Plaintiff incorporates all preceding allegations.

151. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including: a failing grade after high performance, defamation, false accusation, assault, intimidation, public humiliation, academic threats, financial loss, academic standing, emotional distress, and delayed graduation.

### Economic Damages

152. Plaintiff seeks compensation for:

a) educational expenses;

b) costs associated with delayed graduation;

c) additional coursework expenses;

d) treatment-related expenses; and

e) other financial losses proven at trial.

**Non-Economic Damages**

153. Plaintiff seeks compensation for:

a) emotional distress;

b) humiliation;

c) reputational harm;

d) anxiety and psychological effects;

e) loss of academic opportunity; and

f) other non-economic damages.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in Plaintiff's favor;

2. Award compensatory damages in an amount determined by the evidence;

3. Award punitive damages where permitted by law;

4. Award appropriate equitable and injunctive relief;

5. Order appropriate review or correction of disputed academic records where legally available;

6. Award costs and any authorized fees;

7. Grant Plaintiff a trial by jury; and

8. Grant any other relief the Court finds just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## Respectfully submitted this 10th day of August 2026

Breanna Davis
Plaintiff, Pro Se
3115 Regency Park Drive
Stonecrest, GA 30038
470-862-1303
breannadavis789@gmail.com
Pro Se Plaintiff
Signature *Breanna Davis*
Date: 08/10/2026

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
Northern District of Georgia

_____Atlanta_____ Division

Breanna Davis

)
)
)
)

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

SEE ATTACHED

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:26-CV-4529

_____
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

    **A.    The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Breanna Davis |
| Street Address | 3115 Regency Park Drive |
| City and County | Stonecrest Dekalb |
| State and Zip Code | Georgia 30038 |
| Telephone Number | 470-862-1303 |
| E-mail Address | breannadavis789@gmail.com |

    **B.    The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name                            Board of Regents of the University System of Georgia

Job or Title *(if known)*       Organization

Street Address                  270 Washington Street

City and County                 Atlanta Fulton

State and Zip Code              Georgia 30334

Telephone Number

E-mail Address *(if known)*

Defendant No. 2

Name                            Dr. Mohsen Aliabadi

Job or Title *(if known)*       Professor

Street Address                  2000 Clayton State Blvd

City and County                 Morrow Clayton

State and Zip Code              Georgia 30260

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name                            Dr. Elliot Krop

Job or Title *(if known)*       Department Chair

Street Address                  2000 Clayton State Blvd

City and County                 Morrow Clayton

State and Zip Code              Georgia 30260

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name                            Dr. Jere Boudell

Job or Title *(if known)*       Associate Dean

Street Address                  2000 Clayton State Blvd

City and County                 Morrow Clayton

State and Zip Code              Georgia 30260

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**II.    Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
a. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d;
b. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681;
c. 42 U.S.C. § 1983;
d. the First Amendment; and
e. the Fourteenth Amendment.

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ _____, is a citizen of the State of *(name)* _____ ____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.     If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

SEE ATTACHED

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

WHEREFORE, Plaintiff respectfully requests that this Court:
1. Enter judgment in Plaintiff's favor;
2. Award compensatory damages in an amount determined by the evidence;
3. Award punitive damages where permitted;
4. Grant appropriate injunctive relief preventing continued retaliation;
5. Require appropriate review of disputed academic records consistent with applicable law;
6. Award costs and any other relief permitted by law; and
7. Grant any additional relief the Court finds just and proper.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            08/10/2026

Signature of Plaintiff

Printed Name of Plaintiff   Breanna Davis

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address